May it please the Court, Randy Warner appearing for appellants Gary and Sonia Rabine. One thing I'm not going to do here this morning is defend the language that the jury found my client used. I find it as offensive as you undoubtedly find it. I was as shocked by it the first time I read it. But offensive and insult and opinion do not equal defamatory. And Arizona law is very clear that to be defamatory, a statement has got to either state or imply facts about the plaintiff. In this case, the judge took that issue away from the jury. Why do you say that that's true in a defamation per se case? I mean, the idea of slander per se is that the defamatory language is so plain on its face that you get to a jury. You don't have to show reputation damage. I mean, that's the whole idea of slander per se. So how do you square that? And obviously the district court had problems with that, your theory about insult with the theory of slander per se. Your Honor, the cases use the term slander per se in two different senses. One I would characterize as per se. The other I would characterize as a matter of law. In the one sense, the cases say that certain statements about people are so inherently damaging to the reputation, you don't have to prove specific harm to get damages. I would call that sort of classic defamatory per se. Go ahead. Sorry. The theory underlying that is that those statements themselves have such defamatory meaning on their own. The statement itself has such defamatory meaning on its face that the case is over as far as that is concerned, right? Correct, although that's the – there's a fine line between saying something about a person is so bad that it automatically causes damage and interpreting the statement as a matter of law. The Yetman case says under Arizona law, the jury gets to determine whether the statement is susceptible of more than one interpretation. If you compare the Yetman case with the Church case, another Arizona case. Well, if, just to make the question concrete, if the statement, she is a whore, was made, how can it be anything other than defamatory? It certainly is insulting. Absolutely insulting. It's certainly offensive. And I find it hard in context to find anything humorous about it. So – and I don't believe that that was your theory. So I'm a little hard-pressed to understand, if the statement were made, then why isn't it just plainly defamatory? That is, defamatory per se. Let me give you a counterexample. Well, yeah, but how about just answering the question? Okay. And then you can give a counterexample. Thank you. The statement is only defamatory, and therefore defamatory per se, if it was interpreted as an actual statement of fact about a person. Now, I don't think anybody in this trial testified that it was a statement that she actually is engaged in the act of prostitution. Plaintiff's theory is that she is a whore was metaphor for she is promiscuous. Whether the statement actually meant that, whether it was intended to mean that, whether it was interpreted to mean that, is a question of fact for the jury. And, in fact, witnesses testified. One witness testified very clearly, I didn't think this really meant anything true about the person. I don't think it meant anything other than, and this is his words, just an insult. My counterexample is this. Two young and indiscreet men are talking to each other and insulting back and forth, and one of them says, your mother's a whore. Is that statement defamatory? Is the law of defamation such that you can't call people certain names because those names are always, as a matter of law, interpreted to mean what they literally say? And the answer is no. The Antman case says that. Well, I don't think it quite says that, because in Arizona, Arizona does it by common law. Many states do it by statute. There are certain categories that we define as slander per se, and you may say, well, those are outdated categories, but that's what the law is. And sexual promiscuity is one of those categories. And it's clear that that's what this was intended to be. You know, the funny thing is, I don't quite understand your defense. As I understand, you defended this case on the basis that he didn't say it. He wasn't even there. Now you're saying, but I wanted to say if he were there, it was just an opinion, and if it's not an opinion, it's true. Isn't that? Those are all inconsistent defenses. Your Honor, they're alternative defenses. I disagree that they're inconsistent. The defense was that they weren't. Well, if the statement is provable and you tried to put on evidence that it was true, then it's not that the statement is not an opinion. It is an opinion that is capable of proof one way or the other. That's what you wanted to defend on in the alternative. So I understand how you can defend in the alternative, but as we take this and why, in looking in the district judge's mind, why you're entitled to a jury instruction or not, your defense was it didn't happen. Your defense was your client didn't say, look, in context, I didn't mean it that way. He didn't say that. I mean, most opinion defenses are defended that way. We say it's on the editorial page, for heaven's sakes. It's an opinion. And then we say, well, it's an opinion or fact. We look at Milkovich. We kind of say it may or may not be a question of law for the jury. That wasn't your defense. Your defense was he didn't say it. So I think it's hard for me to say how the district judge wasn't justified in saying we're not going to give an opinion defense to the jury because that's not his defense. Your Honor, I don't believe there's any law that supports the idea that you cannot defend a case alternatively as, A, we didn't say it. But if the jury finds that it was said, it was not the statement alleged, it was not defamatory. I mean, here's what the witness says. When you allegedly heard this comment, what did you think it meant? Just a nasty remark. Was it just an insult? Yes. You don't think the comment was meant to imply anything truthful. That is correct. Yes. That's exactly the Yetwin case. The Yetwin case says that juries get to decide whether the statement is meant to imply anything factual or state anything factual. Well, under the Court's instruction, the first instruction, did you argue to the jury that the statement was not capable of factual proof one way or the other? Under the instruction the Court actually gave. No, we didn't, because the judge precluded it as a matter of law. And the jury said, I think you're as correct as you could have. I disagree, Your Honor, that we could have. The judge had already ruled that it was defamatory as a matter of law, didn't give us the jury instruction on which to make that argument. No, the jury instruction you tendered, you tendered two of them on that. One of them was that opinion was protected by the First Amendment. That's different. And of course, that's, I think, incorrect as a matter of law anyway. But the jury instruction you tendered said opinion is protected by the First Amendment. I don't see anywhere where you precluded from arguing this wasn't a, this was an opinion. It was not a statement of fact. Your Honor, that's not the only instruction we offered that was rejected. No. You had the insult instruction, which is different. And there's a third that defined objective fact, and it uses exactly the language from Yetman. A statement asserts or implies an objective fact when a reasonable person hearing the statement would believe the speaker was communicating factual information. Right. But I think Judge Reimer's question is mine, too, is the fact that the district court rejected those instructions doesn't necessarily mean you can't argue that the elements of the tort weren't met. And the first instruction defined the elements of the tort as including a false statement of fact. What precluded you from arguing this was not a false statement of fact? Your Honor, that's not the instruction that was given in this case. Here's the instruction. Defamation is a false publication. It impeaches another's honesty. Well, there you are. Well, and the missing link, Your Honor, with all respect, is statement of fact. This jury was not instructed that the statement had to be factual. Now, I suppose you could say that the word false implies, implicit in the word false, is provable as false, factual. I don't think the jury got that inference. And under Arizona law --" Let's go back to square one. Did you make the argument? We did not make the argument, Your Honor. And to be honest, and I didn't try this case, but the reason we didn't make the argument is that the judge had already precluded us from doing so. The judge's ruling was not just, well, I'm rejecting your jury instructions, but go ahead and make your argument. The judge ruled as a matter of law this statement is defamatory. Sure. He said it was defamation per se, which I think is consistent with Arizona law. I mean, you have to agree with that. Arizona law defines sexual promiscuity as one of those categories in which if you make a statement, it's a --" it fits in the definition of slander or libel per se, right? Yes. There's nothing wrong with that, is there? Not at all. And let me be clear. Two comments the Court made that I want to respond to. The first is you may think this is antiquated. I do not think it's antiquated. Absolutely. Oh, I just said one could argue with it. And Judge Rimer had suggested that it's not humorous at all. It absolutely is not humorous. As I said, I'm not here to defend the statement. Well, I said that not meaning to say something, make a comment about this statement, but the Evel Knievel case is an example where a word choice can be, in fact, used in a humorous or sartorical, some kind of sense that connotes something other than what the word on its face means. But there's nothing of that sort in this comment that was argued, so far as I understand it, right? I disagree. The — again, the testimony was that this was just an insult. Yeah. I don't understand. You know, maybe I — it's just been a long time since I've done an awful lot of defamation law, but I don't understand the point of saying it's just an insult.  Yes, but not just an insult. And not all insult is a defamation? Correct. Well, but your proposed instruction doesn't say that. I mean, it just says insult. Well. I mean, it's pretty insulting if you defame somebody normally. Correct. But the proposed instruction, the other proposed instruction, also says that the statement asserts or implies an objective fact. Right. But with respect to defamation — I'm sorry. No, no, no. With respect to defamation per se, though, when we're talking about certain types of insults, certain types of statements, isn't that what the whole purpose of the defamation or slander per se is, is that certain insults by their nature are such that we're going to consider them defamatory? If the jury interprets them as stating or implying facts. It seems like you're trying to repeal the law of defamation per se in your argument. I've never found a case in which — and you probably — maybe you have — in which an insult defense was allowed in a case in which it was clearly a defamation per se case. In other words, once the Court rules and it's clear that it's a defamation per se case, which you agree under Arizona law this is, I just don't have — I don't have any — I haven't seen a case where a mere insult defense is allowed. And I think the reason is it's completely antithetical to the theory of defamation per se. If it's defamation per se, you can't say it's just an insult legally. Your Honor, I think Yetman is that case. Prior Arizona case law says if you call someone a communist, that is defamation per se. That's the Church case. Yet in Yetman, the individual was called a communist, and the Court says no. The jury gets to decide whether that statement was meant literally or in some other sense that's not meant to imply something factual. Let me ask you a different question. Sure. The — under the instructions that were given, it's obvious that the jury found defamation per se. That is, it found that the statement imputed serious sexual misconduct. So even if there were error, isn't the error harmless? No, Your Honor, because the difference between — as I started this argument trying to distinguish between two senses in which we use the word defamatory per se, one meaning that the injury is such that we presume it, you get general damages without specific proof of harm, and two, defamatory as a matter of law. That's really the second is the question that we're dealing with here today, and that's not a question that the jury decides or decided. It's a question that the judge decided. I'll concede that if this statement meant what plaintiff says it meant, that it is defamatory per se. That is, he gets damages without proving specific harm. What I don't concede and what I disagree with is that it's reasonably susceptible of only one interpretation. Well, what is the interpretation that it's reasonably susceptible of, other than that she was getting paid for sex? Again, to go back to Marcus Martinez's testimony. No. I mean, look, here's the statement that was made. She's a whore. What is — what is — what's another interpretation that's reasonable from that statement other than that she was a prostitute? Your Honor, things are often said, and I think the law of defamation recognizes this, people say things that aren't meant to suggest what they literally say. My example of somebody saying, your mom is a whore, I'm not — people have said that to me in my younger days, and nobody really meant that my mother was a prostitute. It's simply an insult, a nasty remark, and that's what the testimony supports. Could it be that another interpretation might be that the — she was promiscuous? Yes. I agree that there are actually, in this case, three interpretations. We're asking you for those interpretations, counsel. I'm sorry? We're asking you for those interpretations. Yes. One interpretation is she's actually a prostitute. I don't think anybody testified that that's the case. A second interpretation, the one that plaintiff argued at trial, is that she is promiscuous. What's your third interpretation? Third interpretation is that it simply didn't mean anything truthful about her. It's simply a nasty remark, inappropriate, offensive. But what you wanted to do was to prove that it was true. Your Honor — I mean, I'm puzzled. Yes. We are going to — You're saying it's a mere insult, but it's true, and if it's — it might have been an opinion. I mean, you tried the case basically that it didn't happen. That was your defense, right? Correct. He wasn't there. It didn't happen. He didn't say it. Correct. I don't think the — correct. He said he wasn't there. The argument was it wasn't said. If it was said, it's not a statement that's reasonably susceptible of — excuse me, I said that wrong. It's not a statement that was meant or interpreted as stating anything factual about the plaintiff. And if, in fact, it did, it's true. That was your — those are your three theories you're offering to us today. Correct. And the jury could well have found one but not the other, which is why you would make arguments in the alternative. And the jury could have — could have said, yes, I agree with plaintiff that this is what the statement meant, which then raises the people's heads. How could the jury have possibly found that when it found that the statement imputed serious sexual misconduct? Let me go to the jury instructions because I — it's not clear to me from the jury instructions that the jury necessarily found the statement defamatory per se. The Court had made that decision already. Well, the jury was instructed the circumstances under which an oral statement is defamatory per se. Correct. It obviously found that to be true. The jury was not instructed that it may only find for the plaintiff if the statement was defamatory per se. Let me, if I may, save the rest of my time for rebuttal, although I suspect I'm starting to beat a dead horse. Surely. Thank you, counsel. Good morning, Your Honors. Armin Solis on behalf of Ana Parada, customs inspector at the Port of Entry in Nogales, Arizona. I think, first off, the Court should put a little emphasis on the fact that in the pretrial order, the parties stipulated that the question of whether the statement was defamation per se was a question of law. And we submitted that to the Court, and the Court found, under Arizona law appropriately, under the Boswell v. Phoenix newspaper case, that it was defamation per se. And so once you get the – But you still need to establish the elements during the trial. Yes. And we did that. There were three supervisors, sub-supervisors, if you will, to Mr. Ryburn, the assistant court chief at that station, who were present when he made the statements. They all testified at the trial. They testified, all of them, that they heard the first part of the statements, which are, I think, possibly even more offensive than the Hoar comment. It's more offensive, but does it say anything other than – Well, I think as the comment of the Hoar, if you say someone is going to the doctor, the circumstances, as the Court knows, is that she submitted a slip to take two hours off to go see a physician. And when one of the supervisors, her direct sergeant, hands the slip to Chief Ryburn, he says, well, she's going to the doctor to get her pussy sewn shut because she's a Hoar. Well, what does the first part suggest? It suggests and reinforces that she's a Hoar, that she's promiscuous, that she has to have some surgical procedure to curb her excesses in the sexual area. None of it, clearly, is a matter of public concern with respect to any claim that it dealt with two politicians who were arguing about issues, and, obviously, the issues and facts in that case had to do with matters of public concern. That statement to supervisors, her direct supervisor, clearly had nothing to do with that. So once the parties agree what is and what is not issues of law in the case, and the defense makes here, fall by the wayside. But not only that, when they get into the question, Mr. Ryburn testified, and throughout the trial, he denied ever making those statements, not withstand under oath, not withstanding the fact that those three supervisors came in and testified that he made the statement. Counsel, may I go back to the statement you made at the beginning of your answer? And you said the Court determined pretrial that this was a, as a matter of law, that this was defamation per se. However, it appears to me that that issue still went to the jury. I'm reading from the jury instructions now. An oral statement is defamatory per se if it imputes the commission of crimes involving moral turpitude or imputes serious sexual misconduct on the part of the person defamed. If the defamatory comment or statement is actionable per se, injury is presumed, then the plaintiff does not have to prove special harm in order to recover compensatory damages if you find the defendant, Rabin, has committed the tort of defamation per se against the plaintiff. In this case, you are permitted to give the plaintiff an award of general damages, et cetera, et cetera. The instructions don't say you are instructed that the this was defamation per se. It sets forth the general definition of defamation, as we've said. It gives two instructions on defamation per se, and then it says if you find the defendant has defamed a person, the statement is defamatory per se. So wasn't that issue submitted to the jury? It was submitted to the jury, Your Honor. I think the point that I'm trying to make with respect to the pretrial order is that we stipulated what were and what were not the issues of law in the case. Yes. He basically said you get an instruction. You persuaded me to give an instruction to the jury on defamation per se. And it wasn't an instruction on defamation per quat. It was defamation per se because the parties agreed that that was an issue of law. We submitted it. We briefed it. The Court ruled on it. Right. And then it was submitted to the jury. The jury found it true. Exactly. They did not believe Chief Ryburn, and they believed the three sergeants who testified that he made the statements. And once you get past that, I think then the arguments with respect to the jury instructions as to alternate interpretations of what that statement might mean, I think, are no longer applicable, because if it is a defamation per se, there are no other interpretations. It is, if you find it, as the jury did, it is a comment on the reputation of the chastity of the plaintiff in this case. It is the most vile of comments that you can make about the chastity. It's like calling somebody a thief. It's calling a woman a whore. It doesn't get any clearer than that. You don't have to interpret what that means. Everybody knows what it means. And the jury just had to find that he actually said those things. And they found that he said those things. At that point, then, the defendant, with respect to his request for instructions, the request for the instruction on different interpretations, I think, was appropriately denied. Once the Court determined that it was a per se defamation. Secondly, the defendant never introduced any evidence, although it wasn't precluded from doing so, on a truth defense. What they suggested the Court do was to take hearsay from one person that said that, well, over the years, he had heard comments that she was a slut, that she was easy, words to this effect. He could not say who told him that or where he heard it or when he heard it. And so the Court felt appropriately, we believe, under 403, that the probative value of that kind of hearsay ephemeral comments was overly prejudicial, would confuse the jury given the instructions that were going to be given, and were clearly prejudicial. And the – I believe that the defendants claimed that truth should be – the instruction on truth as a defense, since there was no evidence presented in that regard. They didn't attempt to present any, and they were not precluded from presenting any. And the defendant admitted on the record that given the fact that the opinion evidence, if you will, the reputation evidence that was precluded under Rule 403 was not admitted, there was no other evidence to contradict the statements. Kennedy. But, Counselor, let me ask you, you're suggesting that if they had done so, if they had presented evidence of truth, that might have been properly admissible evidence of truth, not non-prejudicial evidence of truth. That certainly would have been appropriate. Yes. So you concede, therefore, that just simply because the statement was made, and it's considered a defamatory per se statement, does not end the discussion. You still need to consider whether or not it's fact or false, whether it is opinion or fact, whether it's an insult or not an insult. Those are still questions that need to be answered by the jury, even though the statement is considered, if true, defamatory per se. Well, I wouldn't go as far as Your Honor did. I don't think the jury decides that a defamation per se is an insult. Clearly, it's an insult. Any – if you call someone a thief, it's not only defamatory per se, it's an insult, as calling someone a whore is an insult. I don't think the jury gets to decide whether it's an insult and that, therefore, we won't hold that person liable for it. But if the defendant here could have picked up an inspector and said, well, Inspector Smith over here is going to testify that Anna gave sex for money, well, then she is a whore. And then you've provided a defense. Is every sexually related insult defamatory per se? If it – in Arizona, I believe it is. Under the Arizona case law, under Boswell v. Phoenix, Arizona still holds to the categories of defamation per se. Defamation, a comment on your business that hurts your business reputation, a comment that you committed a crime involving moral turpitude, a comment that you impugn the integrity or, rather, the chastity of a woman, all of those in Arizona are per se violations. Very well. Is every sexually related opinion per se defamatory under Arizona law? I don't believe so. So if it's not – if it's an opinion, it's not defamatory per se? Well, it can be or it cannot be. I think the law differentiates opinions from statements which imply facts. And when you call somebody a whore, there is an implied fact there, that somebody out there has paid this person for sex. That's the fact that's implied. You may say somebody is – you may have an opinion, and the manner in which you say it doesn't imply some fact. Well, let's use the facts of this case here or the alleged facts in this case here. How do you distinguish between accusing someone of being a prostitute and using derogatory language, saying you're a whore? How do you – how do you know if that's an opinion or a fact, that the person is intending an opinion or a fact? Isn't that – you have to consider context and all the other – No, I don't think so. I think because – How do you make that decision as a matter of law? I think as a matter of law, when you have case law, as we do, that says that if you impugn the chastity of a woman or you impugn the moral fiber of a person, i.e., a thief, if you say somebody is a thief, what you're saying is that he stole something. He or she stole something. There's a fact that's a predicate for that statement. When you call somebody a whore, there's a fact implied in that statement, and that is that they've been paid for sex. That's why it's so onerous. That's why the law has developed the way it is, because you can't defend against it. Your reputation has been harmed irreparably just by the utterance of the words. That's why you don't have to prove damages. The law presumes those damages. Now, you can say somebody is – and I'm – I can't imagine the context, what opinion somebody might have that would not be defamatory, that would comment on the sexuality of a person. There are cases which suggest that if you call somebody queer, that's defamatory. Well, try to give me an example, because you said that all opinions regarding – sexually explicit opinions are not defamatory, per se. Give me an example of one that would not be defamatory, per se, a sexually related opinion about somebody else. She's hot. What does that mean? Susceptible to many interpretations. Yes. I suppose. But a whore, no, that's not susceptible to too many opinions. I mean – What about the alternative interpretation given by counsel, that it's not necessarily about prostitution, but about promiscuity? Well, that's the whole point. It is, if you undermine, if you make a statement that calls into question the chastity of a woman, you are libeling her, per se. It's a defamation, per se. It's not a question of opinion. It's a question of a fact. You're saying that this person's a whore, which means that she went out and got money for sex. It's just that you call somebody a thief, that means they stole. You call somebody a murderer, that means they killed. If you say somebody's hot, you've got an opinion, and somebody might interpret that a couple of different ways. I know that my son might, you know. I mean, there are different ways, there are things you do not say about people, especially if you're the assistant port director of the Nogales Port of Entry to a female inspector. And I would ask if this panel decides that, to affirm this decision, that it publish it as an educational tool for the Border Patrol in the Customs. Mr. Reitman is still on duty, got a letter of reprimand, and that's it. Thank you, Your Honors. Unless you have any further questions, I really don't. If you have any further questions, I don't think so. Thank you. Mr. Horner. Horner. I want to start off with a question that Judge Larson asked. Is every sexually related insult defamatory? And the point of Yetwin, although it involved calling somebody a communist and not impugning their promiscuity, says no, it's not. You've got to look at language in context. And more than that, the jury gets to look at language in context and gets to decide whether that language has the meaning that the plaintiff suggests it had. We've cited a bunch of cases in which insults, comments, language that are sort of on par with this, although frankly it's hard to imagine anything worse, were held not to be defamatory or were found not to be defamatory. But all those are in the pure insult category, maybe with one exception. All of them are just epitaphs hurled at somebody. They're not they don't apply statements of fact. Your Honor, perhaps the exception you're talking about is the, I think it's the Funderburg case. Yeah. And that was clearly one in which we're talking about the condition of a room and not directed toward any particular individual. It was a, if anything, group libel, which is not cognizable under Washington law anyway. So I don't see any of your examples going anywhere in this context. I mean, if you call someone, you know, one of those common epitaphs, that's one thing. It's an insult. But if you use one of the none of those are in the category of defamation per se, with the exception of perhaps the one case. And I would use that case as the example. I mean, if you say that an area is a horse nest, the point of that case, of course, the trial judge is the one that was the finder of fact in that case. And the point of that case is that the trial judge got to determine what the language meant, who it referred to, and whether it was defamatory. That was the real question there was didn't, who did it refer to? There is no question here about to whom it referred. Correct. But in that case, if the comment would have referred to the individuals, you know, then it's defamatory. If it referred to the area, it's not defamatory. The point was that the trial judge gets to make that. I would ask that you reverse and remand for a new trial. Thank you. Okay. Counsel, thank you for your argument. The matter just argued will be submitted.
judges: Rymer, Thomas, Larson